

**U.S. Department of Justice**
*United States Attorney's Office*
*District of New Jersey*

*970 Broad Street, Suite 700*
*Newark, New Jersey 07102*

January 27, 2026

**Via ECF**

The Honorable Madeline Cox Arleo
United States District Court
Martin Luther King, Jr. Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

      Re:    <u>United States v. Andrews, Crim. No. 20-578</u>

Dear Judge Arleo:

      The United States submits this letter to set forth its position on the restitution owed by defendant Jeffrey Andrews in this matter. At sentencing, the Court asked the parties to submit further briefing on this issue, specifically as to whether the Court should use the agreed-upon restitution amount from the plea agreement ($33,615, 870.29) or a lesser amount attributable only to the losses to federal programs ($6,519,177.14).

      By way of background, the Defendant was charged with conspiracy to commit health care fraud, health care fraud, conspiracy to violate the federal Anti-Kickback Statute, and violating the Anti-Kickback Statute. ECF No. 1. The Defendant pleaded guilty to conspiring to violate the Anti-Kickback Statute. ECF No. 143. As part of his plea agreement, and pursuant to the Mandatory Victim Restitution Act, the Defendant agreed to pay $651,176.99 in restitution to Medicare, $5,868,000.15 in restitution to TRICARE, and $27,096,693.15 in restitution to private health care plans and Medicare Part D plans administered by Express Scripts Holding Company. These are the appropriate amounts for restitution, consistent with the Pre-Sentence Investigation Report dated June 20, 2025 (the "PSR"). *See* PSR ¶¶ 82-84.

In this case, as a result of the unlawful kickback payments, insurance payors paid out millions of dollars in claims that would never have been generated but for the unlawful kickback payments. Medicare and TRICARE are undoubtedly victims of the offense, and those programs suffered a total loss of approximately $6,519,177.14. The private insurance payors were likewise within the scope of the conspiracy and were proximately harmed by the conduct, making them proper "victims" within the scope of the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, whose losses are appropriately included for purposes of restitution. In *United States v. Shah*, 95 F.4th 328, 383 (5th Cir. 2024), for example, the Fifth Circuit upheld a restitution order including private payor victim losses where the underlying conviction was conspiracy to violate the federal Anti-Kickback Statute, even in the absence of a plea agreement expressly including those amounts. As the court held in that case, the conspiracy covered both private and federal patients (even where in that case, as in Main Avenue, conspirators claimed to be trying to avoid federal patients), and the private payor victims were harmed in the same way that the federal payor victims were harmed: "The private insurers were harmed at the same time and in the same manner as the federal insurers because the bribe payment that was the basis for the inflated claims was still the same no matter whether the patient was insured federally or privately." *Shah*, 95 F.4th at 288.[1] So too here, the claims were generated by kickbacks regardless of who the payor for the claim would be and the private payor victims are victims who were proximately harmed by the conduct and properly included in any restitution order.

Moreover, in this case, not only did Andrews agree to pay restitution to all impacted victims under the MVRA, he expressly agreed that restitution was owed to the private payor victims in this case and he expressly agreed to pay that restitution. Even if this Court disagreed with the reasoning of the Fifth Circuit and concluded that the private payors were not victims of Andrews' offense, the MVRA would still require the Court to order restitution in the full amount the parties agreed to in the plea agreement: "The court ***shall*** also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense." 18 U.S.C. 3663A(a)(3). In this case, the parties agreed to restitution for the full amount of losses associated with the broader scheme, which expressly included losses suffered by private payor victims. *See* ECF No. 143 at ¶ 13.

The Defendant cannot (and, thus far, does not) argue to the contrary. Having specifically agreed to the restitution amounts set forth in the plea agreement, it would constitute breach of the plea agreement to argue that restitution is not owed

---

[1] *See also United States v. Young*, 108 F.4th 1307, 1331 (11th Cir. 2024) (likewise holding in the context of forfeiture, that forfeiture associated with violation of the Anti-Kickback Statute could include ill-gotten gains from private as well as federal payors).

2

to the private payor victims. *See United States v. Yusuf*, 993 F.3d 167, 176-77 (3d Cir. 2021) ("When a defendant stipulates to a point in a plea agreement, he is not in a position to make arguments to the contrary.") (internal quotation marks, brackets, and ellipses omitted) (quoting *United States v. Williams*, 510 F.3d 416, 422 (3d Cir. 2007)). The Defendant's agreement to pay restitution was an essential part of the parties' plea bargain and it formed part of the basis for the United States' agreement to accept a guilty plea to Count 8 of the Indictment.

For these reasons, the Court should order the Defendant to pay the restitution he agreed to pay.

        Respectfully Submitted,

        TODD BLANCHE
        U.S. Deputy Attorney General

        PHILIP LAMPARELLO
        Senior Counsel

        /s/  Matthew Specht
        BY:  Katherine M. Romano
        Matthew Specht
        Assistant U.S. Attorneys

cc:    Counsel of Record